**IN THE UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PLANCK, LLC,
a Delaware limited liability company

        Plaintiff,

    v.

PATCH TECHNOLOGIES, INC.,
a Delaware corporation

        Defendant.

C.A. No.

**JURY TRIAL DEMANDED**

**PLAINTIFF PLANCK, LLC'S COMPLAINT**
**FOR TRADEMARK INFRINGEMENT AND OTHER CAUSES OF ACTION**

Plaintiff Planck, LLC, doing business as Patch Media ("Patch") alleges as follows:

**NATURE OF THE ACTION**

1.      Patch is the trusted local news organization known nationally for its dedication to original and unbiased reporting of local news, and is the owner of the famous PATCH trademark, which has been used continuously in interstate commerce in connection with such platform and related goods and services, including, without limitation, the website located at www.patch.com, mobile applications, advertising services, streaming video and audio material and social networking services, commencing at least as early as February 4, 2009.  Indeed, in many  towns, across the United States, "the Patch" is known as the only place remaining for unbiased local news, covering the topics people in towns need for a healthy community such as schoolboard meetings, obituaries, weather events and climate disasters, and national and local election and political coverage. Patch owns several United States trademark registrations for the PATCH Marks, and reaches most of its 20 million+ monthly readers by email newsletters.  The newsletters are vital in driving traffic to the patch.com website.  Moreover, by virtue of its use of its PATCH Marks in

1

commerce, Patch has developed common law rights in the PATCH Marks in connection with goods and services identified in Patch's United States trademark registrations.

2.      As alleged herein, Defendant Patch Technologies, Inc. ("PTI") is using confusingly similar and infringing "Patch" marks (the "Infringing PATCH Marks") in connection with PTI's advertisement and offer for sale of related services.

3.      Despite direct demands from Patch, the senior and only lawful user of the PATCH Marks, Defendant PTI has refused to cease and desist from using the Infringing PATCH Marks. Defendant PTI's refusal to cease and desist from using the Infringing PATCH Marks has forced Patch to bring this action.  Patch seeks both monetary damages and injunctive relief.

## JURISDICTION AND VENUE

4.      This is an action for injunctive and other relief under the Federal Trademark Act, 15 U.S.C. §1051, et seq. ("Lanham Act"), particularly 15 U.S.C. §§1114 and 1125(a) and (c),  for trademark infringement, false designation of origin, false description or representation, trademark dilution, and related unfair competition.  Plaintiff Patch also asserts claims in accordance with common law rights pursuant to Delaware common law and Delaware statutes for unfair competition.

5.       This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and  1338(a) and (b), and by virtue of 15 U.S.C.  §§1051 et seq., in that the case arises out of §43(a) of the Lanham Act for trademark infringement and supplemental jurisdiction under 28 U.S.C.  §§1367(a) and 1338(a) and (b).

6.      Personal jurisdiction is proper over Defendant PTI because Defendant PTI is incorporated in the State of Delaware and is thus "at home" in this judicial district; PTI conducts business in Delaware; or PTI otherwise avails itself of the privileges and protections of the laws

of the State of Delaware, such that this Court's assertion of jurisdiction over Defendant PTI does not offend traditional notions of fair play and due process.

7.     Venue is proper under 28 U.S.C. §1391(b) in that, upon information and belief, the Defendant PTI resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in the District of Delaware, including the acts of infringement complained of herein against Defendant PTI.

8.     Venue is also proper under 28 U.S.C. §1391(b) in that PTI is subject to the Court's personal jurisdiction in the District of Delaware, for the reasons set forth above.

## THE PARTIES

9.     Plaintiff Patch is a Delaware limited liability company with its principal place of business in New York, New York.

10.     On information and belief, Defendant PTI is now, and was at the time of filing this Complaint, a Delaware corporation with its principal place of business in San Francisco, California.

## GENERAL ALLEGATIONS

11.     Plaintiff Patch owns several United States trademark registrations for the PATCH mark and variations thereof including, without limitation, the following (collectively, the "PATCH Marks"):

| Trademark | Reg. No. | Reg. Date | Goods and Services [Claimed Date of First Use] |
|---|---|---|---|
| PATCH (See Exhibit A) | 4,007,928 | August 9, 2011 | Class 35: Advertising services, namely, providing space in an online newspaper and dissemination of advertisements and classified advertising for others online and on wireless and mobile devices; providing news, information and listings on a variety of |

3

| Trademark | Reg. No. | Reg. Date | Goods and Services [Claimed Date of First Use] |
|---|---|---|---|
| | | | topics of general and local interest, namely, politics and business. [2/4/2009] |
| | | | Class 38: Providing streaming video and audio material on the Internet and on wireless and mobile devices.  [2/4/2009] |
| | | | Class 41: Providing online non-downloadable newspapers featuring news, information and listings on a variety of topics of general and local interest; providing news, information and listings on a variety of topics of general and local interest, namely, news in the nature of current events reporting, sports, entertainment, the arts, and leisure activities.  [2/4/2009] |
| **Patch** (See Exhibit B) | 4,014,291 | August 23, 2011 | Class 35: Advertising services, namely, providing space in an online newspaper and dissemination of advertisements and classified advertising for others online and on wireless and mobile devices; providing news, information and listings on a variety of topics of general and local interest, namely, politics and business.  [2/4/2009] |
| | | | Class 38: Providing streaming video and audio material on the internet and on wireless and mobile devices. [2/4/2009] |
| | | | Class 41: Providing online non-downloadable newspapers featuring news, information and listings on a variety of topics of general and local interest; providing news, information and listings on a variety of topics of general and local interest, namely, news in the nature of current events reporting, sports, entertainment, the arts, and leisure activities.  [2/4/2009] |
| PATCH (See Exhibit C) | 4,357,838 | June 25, 2013 | Class 45:  Online social networking services. [9/23/2012] |
| PATCH (See Exhibit D) | 4,357,839 | June 25, 2013 | Class 9:  Downloadable software, namely, a mobile application that provides targeted content to users; downloadable software, |

| Trademark | Reg. No. | Reg. Date | Goods and Services<br>[Claimed Date of First Use] |
|---|---|---|---|
| | | | namely, a mobile application that provides users with news, information, and listings on a variety of topics of general and local interest; downloadable software, namely, a mobile application that provides users with news and information about local events, community issues, businesses, sports, shopping, education, entertainment, the arts, leisure activities, weather, and topics of general interest; downloadable software, namely, a mobile application that provides users with a mobile business directory; downloadable software, namely, a mobile application for use in accessing, sending, sharing, broadcasting, and receiving data and information via communications networks; downloadable software, namely, a mobile application for use in accessing and streaming audio and video content; downloadable software, namely, a mobile application for use in accessing blogs and blog posts; downloadable software, namely, a mobile application for use in social networking.  [4/14/2011] |
| PATCH LOCALSTREAM<br>**(See Exhibit E)** | 5,710,004 | March 26, 2019 | Class 35:  Advertising services, namely, providing space in an online newspaper and dissemination of advertisements and classified advertising for others online and on wireless and mobile devices; providing news, information and commentary on a variety of topics of general interest, namely, politics and business; advertising and marketing services provided by means of indirect methods of marketing communications, namely, social media, internet marketing, mobile marketing and other forms of passive, sharable or viral communications channels.  [9/21/2015]<br><br>Class 41:  Providing online non-downloadable newspapers featuring news, information and articles on a variety of topics of general interest; providing news, |

| Trademark | Reg. No. | Reg. Date | Goods and Services [Claimed Date of First Use] |
|---|---|---|---|
| | | | information and articles on a variety of topics of general interest, namely, news in the nature of current events reporting, sports, entertainment, the arts, and leisure activities. [9/21/2015]<br><br>Class 45:  Online social networking services. [9/21/2015] |
| PATCH<br>(See Exhibit F) | 7,097,757 | July 4, 2023 | Class 41:  Providing online newsletters via email featuring news, information and listings on a variety of topics of general and local interest, namely, in the fields of news, current events, local events, community issues, sports, education, entertainment, shopping, the arts, leisure activities. [10/13/2010] |
| **Patch**<br>(See Exhibit G) | 7,097,758 | July 4, 2023 | Class 41:  Providing online newsletters via email featuring news, information and listings on a variety of topics of general and local interest, namely, in the fields of news, current events, local events, community issues, sports, education, entertainment, shopping, the arts, leisure activities. [10/13/2010] |

12.     Each of the registrations identified above is valid, subsisting and in full force and effect and, with the exception of Registration Nos. 5,710,004, 7,097,757, and 7,097,758, is incontestable pursuant to 15 U.S.C. § 1065.  Each of the registrations is *prima facie* evidence of the validity of the PATCH Marks and of Patch's ownership of, and exclusive right to use, the PATCH Marks as set forth in such registrations in commerce.  Each of the registrations identified above confers a nationwide right of exclusive use in connection with the services specified in the respective registrations.

13.     Known as "The Patch" in many towns across America, Patch is a trusted  online publisher of local and hyperlocal community news and information of all kinds. Patch also owns

6

and operates the patch.com news platform and Patch mobile applications.  Original reporting is a difficult and expensive business that is in many ways a community service.  In an age where big tech platforms backed by large investors—such as those backing PTI—have grievously damaged the news business, one thing Patch has left is the purity of its brand – of being known as Patch – the place that keeps citizenry up to date with the issues that matter most to them.

14.     Patch's predecessor, America Online, one of the pioneers of internet content, spent at least $400 million developing and supporting the PATCH brand.  Since acquiring the Patch news platform and PATCH Marks in 2014, Patch has continued to invest in maintaining and growing the brand.

15.     Patch has roughly 4 million email subscribers.  Patch email newsletters are crucial in helping its subscribers keep up to date.

16.     Patch also provides advertising, social media and other online services, all under the PATCH Marks.  Patch and its predecessor AOL have been using the PATCH Marks since at least as early as 2009, and have invested considerable resources in developing recognition and goodwill in the PATCH Marks.

17.     By virtue of its use of the marks in commerce, Patch has also developed common law rights in the PATCH Marks in connection with the goods and services identified in the above registrations.

18.     Also by virtue of its extensive use of the PATCH Marks in commerce and the significant revenue and resources invested by Patch in creating and marketing its goods and services under the PATCH Marks, Patch has acquired considerable and valuable goodwill and recognition for the PATCH Marks.

19.     Consumers have come to associate the PATCH Marks and related logos with Patch and with Patch's goods and services.

20.     Patch continues to advertise, market, offer for sale and sell its goods and services under its PATCH Marks.

21.     With an alleged date of first use of January 25, 2021 – long after Plaintiff Patch's adoption and use of its PATCH Marks in commerce – Defendant PTI adopted and used (and continues to use) in commerce an identical or confusingly similar PATCH mark, including without limitation the stand-alone PATCH word mark and the logo shown below:



22.     In addition to the above Infringing PATCH Marks, and by way of example only, Defendant PTI has also used other Infringing PATCH Marks, including without limitation, PATCH NEWS, PATCH MEDIA, and PATCH PRESS, in connection with various PTI email communications, newsletters, social media posts, news stories, press releases, webpages, and other informational communications with consumers or the general public. Defendant PTI continues to use the Infringing PATCH Marks for its newsletters, inviting visitors to its website to "Stay up to date with everything Patch" by subscribing to its email newsletters.  Such uses of the Infringing PATCH Marks infringe the PATCH Marks, including, without limitation, Patch Registration Nos. 4,007,928; 4,014,291; 4,357,838; 5,710,004; and 7,097,757.

23.     Defendant PTI uses its Infringing PATCH Marks in a manner that is highly likely to cause consumer confusion.

24.     Additionally, Defendant PTI's use of its Infringing PATCH Marks dilutes the distinctive quality of the PATCH Marks, which are famous, and which have enjoyed such

distinction and fame since long before the time Defendant PTI commenced its use of the Infringing PATCH Marks.

25.     News reporting is a time-sensitive and event-driven business, wherein old news has little to no value for consumers. Furthermore, producing original, breaking news is costly, with notably thin profit margins. Defendant PTI, through its past and ongoing use of the Infringing PATCH Marks, erodes Patch's already-thin profit margins by causing consumer confusion and blurring of the PATCH Marks. PTI's conduct as alleged herein results in the actual or potential diversion of Patch's existing and prospective consumers to Defendant PTI.

26.     Such confusion, blurring, and diversion are particularly significant where, as here, Defendant PTI associates its use of the "PATCH" Marks with terms such as "news," "media," "subscribe," "press," or similar news-related language. Defendant PTI's wrongful use of the Infringing PATCH Marks harms Patch's ability to run a viable news business, including without limitation Patch's breaking news business. By way of example only, Defendant PTI's practice of providing, among other things, "Patch" updates to PTI's subscribers, or PTI's practice of asking its users to "follow Patch" for "news," confuses and diverts Patch's consumers and potential consumers, and also blurs the distinctiveness of the PATCH Marks.

27.     Prior to initiating this action, Patch demanded that Defendant PTI discontinue the use of PATCH in association with news-related language, but Defendant PTI declined to do so.

28.     In further contravention of Plaintiff Patch's trademark rights, Defendant PTI has also filed at least two United States trademark applications for the word mark PATCH. Those applications have been assigned Serial Number 90548137 and Serial Number 97458116 (the "PTI Applications").   Plaintiff Patch has filed an Opposition to Defendant PTI's Serial Number

90548137 in the Trademark Trial and Appeal Board, and Patch's Opposition remains pending. Defendant PTI's Application Serial Number 97458116 has not yet been published.

29.     Consumer confusion is likely to occur because, among other things, both Patch and PTI market their goods and services, and use their respective marks, primarily on the internet, including without limitation via communications via email, newsletter, webpage, or other similar means of communication.

30.     PTI's Infringing PATCH Mark is confusingly similar to Plaintiff's PATCH Marks because, among other things:  (a) Plaintiff's PATCH Marks are strong, distinctive trademarks; (b) the Infringing PATCH Mark contains and consists of the identical word "PATCH," and thus the marks create the same overall impression, including with respect to sound, appearance and manner in which they are used; (c) the parties' respective sales channels and distribution methods are the same or highly similar; (d) the parties' advertising methods or channels are the same or highly similar, including that both parties use primarily the internet to advertise and market their goods and services; (e) the Defendant intended to infringe on Plaintiff's PATCH Marks as evidenced by Defendant's refusal to cease and desist from using its Infringing PATCH Marks following receipt of Plaintiff's cease and desist letter and continued refusal after filing of Plaintiff's Opposition to Defendant's Application Serial Number 90548137.  Additional bases demonstrating a likelihood of confusion between Plaintiff's PATCH Marks and Defendant's Infringing PATCH Marks are expected to be developed through discovery.

31.     Additionally, trademark dilution has occurred, and is likely to occur, by blurring, because Defendant PTI's use of the Infringing PATCH Marks has weakened the connection in consumers' minds between Plaintiff's PATCH Marks and Plaintiff's goods and services, on the one hand, and Defendant PTI's goods and services, on the other hand.

32.     Defendant PTI has used and continues to use the Infringing PATCH Marks in interstate commerce without Plaintiff Patch's permission, consent, or authorization.

33.     The acts of Defendant PTI have been willful, as demonstrated by virtue of at least (a) its knowledge of Plaintiff Patch's rights in and to the PATCH Marks; and (b) its refusal to cease and desist from using the Infringing PATCH Marks, as demonstrated by its failure to comply with Plaintiff's demands in its cease and desist letter.

34.     The acts of Defendant PTI complained of herein are in disregard of Plaintiff's rights and were commenced, and it is believed will continue, in spite of Defendant PTI's knowledge that its use of the Infringing PATCH Marks is in direct contravention of Plaintiff Patch's rights.

35.     Defendant PTI's attempts to register its Infringing PATCH Marks are without the consent, license, or permission of Plaintiff Patch.

36.     Plaintiff Patch has been damaged by Defendant PTI's acts of infringement and unfair competition. By way of example only, on information and belief Defendant PTI's wrongful conduct as alleged herein impacts Patch's advertising revenue (including, without limitation, advertising revenue arising from lost email subscriptions, and advertising revenue arising from reduced traffic to Patch's website). Defendant PTI's wrongful conduct as alleged herein also impacts Patch's search engine optimization ("SEO") results. By way of example only, Defendant PTI's use of the Infringing PATCH Marks has resulted in Patch appearing lower in consumers' search results, which, in turn, results in reduced traffic to Patch's website and reduced subscriptions.

37.     Defendant PTI's acts have harmed or will harm Plaintiff Patch's reputation, have damaged or will damage Plaintiff's goodwill, and have created (and will continue to create) the impression that Plaintiff Patch is an infringer, when in fact Defendant PTI is the infringer.

38.     Defendant PTI's aforesaid acts have caused and will continue to cause substantial and irreparable injury to Plaintiff Patch unless such acts are restrained by this Court.

39.     Plaintiff Patch has no adequate remedy at law.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
## [15 U.S.C. §1114(1)]

40.     Plaintiff Patch incorporates herein each and every allegation set forth in Paragraphs 1 through 39 as if fully set forth herein.

41.     With full knowledge and awareness of Plaintiff PATCH's ownership and prior use of the PATCH Marks, Defendant PTI has willfully used and continues to use the Infringing PATCH Marks in commerce, on or in connection with goods and services in a manner that is likely to cause confusion, reverse confusion, or to cause mistake, or to deceive.

42.     The acts of Defendant PTI constitute infringement and use of a confusingly similar mark that is identical with or substantially indistinguishable from the Plaintiff's PATCH Marks, in violation of 15 U.S.C. §1114.

43.     Defendant PTI's wrongful conduct as alleged herein has been willful.

44.     Patch has suffered harm as a result of Defendant PTI's conduct as alleged herein. Patch is entitled to damages, including without limitation, disgorgement of Defendant PTI's profits, damages sustained by Patch, and the costs of this action, pursuant to 15 U.S.C. § 1117.

45.     The acts of Defendant PTI have harmed or will harm Plaintiff Patch's reputation, have damaged or will damage Plaintiff Patch's goodwill, and upon information and belief, will create the impression that Plaintiff Patch is an infringer when in fact Defendant PTI is the infringer.

46.     The aforesaid acts of Defendant PTI have caused and will cause great and irreparable injury to Plaintiff Patch, and unless said acts are restrained by this Court, they will continue, and Plaintiff Patch will continue to suffer great and irreparable injury.

47.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.


**COUNT II**
**FEDERAL UNFAIR COMPETITION AND**
**FALSE DESIGNATION OF ORIGIN**
**[15 U.S.C. §1125(a)]**

48.     Plaintiff Patch incorporates herein each and every allegation set forth in Paragraphs 1 through 47 as if fully set forth herein.

49.     The intentional and unlawful use in commerce of the Infringing PATCH Marks by Defendant PTI constitutes use in commerce of a word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description, and false or misleading representation that is likely to cause confusion, reverse confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendant PTI with Plaintiff PATCH, or as to origin, sponsorship or approval of Defendant PTI's goods, services, or commercial activities by Plaintiff PATCH, or to cause reverse confusion thereof.

50.     The aforesaid acts and use of the Infringing PATCH Marks by the Defendant PTI constitutes unfair competition and false designation, and/or false description of origin in violation of §43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

51.     Defendant PTI's wrongful conduct as alleged herein has been willful.

52.     Patch has suffered harm as a result of Defendant PTI's conduct as alleged herein. Patch is entitled to damages, including without limitation, disgorgement of Defendant PTI's profits, damages sustained by Patch, and the costs of this action, pursuant to 15 U.S.C. § 1117.

53.     The aforesaid acts of Defendant PTI have caused and will cause great and irreparable injury to Plaintiff Patch, and unless said acts are restrained by this Court, they will continue, and Plaintiff Patch will continue to suffer great and irreparable injury.

54.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

## COUNT III
## FEDERAL TRADEMARK DILUTION
## [15 U.S.C.  1125(c)]

55.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 54, as if fully set forth herein.

56.     Plaintiff's PATCH Marks are distinctive and famous, and have enjoyed such distinction and fame since long before the time Defendant PTI commenced use of the Infringing PATCH Marks.

57.     Defendant PTI's activities as described above constitute dilution of the distinctive quality of the famous PATCH Marks, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

58.     Defendant PTI's wrongful conduct as alleged herein has been willful.

59.     Patch has suffered harm as a result of Defendant PTI's conduct as alleged herein. Patch is entitled to damages, including without limitation, disgorgement of Defendant PTI's profits, damages sustained by Patch, and the costs of this action, pursuant to 15 U.S.C. § 1117.

60.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

**COUNT IV**
**DELAWARE COMMON LAW TRADEMARK INFRINGEMENT**

61.     Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 60, as if fully set forth herein.

62.     Plaintiff owns and enjoys common law trademark rights in Plaintiff's PATCH Marks in Delaware in conjunction with use on and for goods and services, which rights are superior to any rights that Defendant PTI may claim in and to said trademarks.

63.     Defendant PTI has used, in connection with the sale and/or promotion of goods and services, a term or name that is false and misleading and likely to cause confusion or cause mistake or deception as to the affiliation, connection or association of Defendant with Plaintiff as to the origin, sponsorship or approval of goods, services, or commercial activities in violation of common law.

64.     The sale and promotion by Defendant PTI of goods and services bearing the Infringing Patch Marks in the State of Delaware is likely to cause confusion as to the source of the goods and services in that purchasers thereof will be likely to associate or have associated such goods and services as originating with Plaintiff, all to the detriment of the Plaintiff.

65.     The acts of Defendant PTI have harmed or will harm Plaintiff Patch's reputation, have damaged or will damage Plaintiff Patch's goodwill, and have created or will create the impression that Plaintiff Patch is an infringer when in fact Defendant PTI is the infringer.

66.     Patch has suffered harm as a result of Defendant PTI's conduct as alleged herein. Patch is entitled to damages in an amount to be proven at trial.

67.     The aforesaid acts of Defendant PTI have caused and will continue to cause great and irreparable injury to Plaintiff Patch, and unless said acts are restrained by this Court, they will continue, and Plaintiff Patch will continue to suffer great and irreparable injury.

68.     The aforesaid acts of Defendant PTI constitute infringement, unfair competition, misappropriation, and misuse of the Plaintiff's PATCH Marks, unfair competition, trademark infringement, palming-off, passing-off and/or reverse-passing off, against Plaintiff Patch and unjust enrichment of Defendant PTI, all in violation of Plaintiff's rights at common law and under the law of the State of Delaware.

69.     Plaintiff Patch has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

## COUNT V
## UNFAIR COMPETITION UNDER DELAWARE LAW

70.      Plaintiff incorporates herein each and every allegation set forth in Paragraphs 1 through 69, as if fully set forth herein.

71.     Plaintiff Patch first adopted and used Plaintiff's PATCH Marks in Plaintiff's markets or trade areas, as a means of establishing good will and reputation and to identify particular goods and services rendered or offered by Plaintiff, and to distinguish them from similar goods and services rendered or offered by others.

72.     Through its association with such goods and services, the Plaintiff's PATCH Marks have, by actual usage, served to identify Plaintiff Patch as the source of the goods and services.

73.     Defendant PTI has commenced the use of an identical or confusingly similar trademark, to identify goods and services rendered by it in the same trade areas in which the Plaintiff has already established its trademark.

74.     As a consequence of Defendant PTI's actions, customer confusion of source or as to the sponsorship of the goods and services offered by the Defendant is likely.

75.     The aforesaid acts of Defendant PTI constitute trademark infringement, unfair competition, and deceptive trade practices under Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. § 2531, *et seq*.

76.     Patch has suffered harm as a result of Defendant PTI's conduct as alleged herein. Patch is entitled to damages in an amount to be proven at trial.

77.     On information and belief, Defendant PTI intends to continue its infringing acts, unfair competition, and deceptive trade practices unless restrained by this Court.

78.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court grant the Prayer for Relief set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

A.      That this Court will adjudge that any and/or all of the Plaintiff's PATCH Marks have been infringed, as a direct and proximate result of the willful acts of Defendant PTI as set forth in this Complaint, including Defendant's use of the Infringing PATCH Marks, in violation of Plaintiff's rights under the Lanham Act, 15 U.S.C. §1051 et seq., and the common law of the State of Delaware.

B.      That this Court will adjudge that the Defendant has competed unfairly with Plaintiff in violation of Plaintiff's rights at common law and in violation of Plaintiff's rights under the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

C.      That this Court will adjudge that the Defendant has diluted the distinctive quality of the famous PATCH Marks

17

D.      That the Defendant, and all officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, be permanently enjoined and restrained:

1) From using or licensing Plaintiff's PATCH Marks, the Infringing PATCH Marks, or any reproduction, infringement, copy or colorable imitation and any formative variations or phonetic equivalents therefor, or any term, name or mark which incorporates any of the foregoing, or any trademark similar thereto or likely to be confused therewith, or to cause dilution of the famous PATCH Marks, in connection with the distribution, marketing, advertising or sale of any goods or services.

2) From using, applying to register, or registering any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the unauthorized goods and services of the Defendant, or of any third parties, are sponsored by, authorized by, or in any way associated with Plaintiff and/or that the goods and services of Plaintiff are inferior to, copies of, infringing of or imitations of the goods and services of the Defendant, or that the Defendant's goods and services are the first or original such goods and services;

3) From applying to register, or registering the Plaintiff's PATCH Marks, the Infringing PATCH Marks, or any reproduction, infringement, copy or colorable imitation and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademark similar thereto or likely to be confused therewith, or to cause dilution of the famous PATCH Marks, in connection with the distribution, marketing, advertising or sale of any unauthorized goods and services;

4) From using, licensing, maintaining, registering, or renewing any confusingly similar domain names (including but not limited to any which incorporate, either in whole or in part, any of the Plaintiff's PATCH Marks), or any reproduction, infringement, copy or colorable imitation and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademark similar thereto or likely to be confused therewith, or to cause dilution of the famous PATCH Marks, in connection with the distribution, marketing, advertising or sale of any unauthorized goods and services;

5) From infringing the Plaintiff's PATCH Marks;

6) From causing dilution of the famous PATCH Marks;

7) From doing any other act or thing likely to cause the public or the trade to

believe that there is any connection between the Defendant and Plaintiff, or their respective goods and services or commercial activities;

8) From falsely representing itself as being connected with Plaintiff, or sponsored by or associated with Plaintiff, or engaging in any act which is likely to falsely cause the trade, retailers, and/or members of the purchasing public to believe that the Defendant or its affiliates are associated with Plaintiff and/or that Plaintiff is associated with Defendant or infringing upon any mark of the Defendant in the use of the Plaintiff's PATCH Marks or of diluting the famous PATCH Marks; and

9) From affixing, applying, annexing, or using in connection with the sale of any goods or services sold by the Defendant, a false description or representation including words or other symbols tending to falsely describe or represent such goods or services.

E.    That the Defendant be required to recall and deliver up for destruction all goods, labels, signs, prints, packages, wrappers, inventory, advertisements, internet advertising and other written or printed material in its possession or control, or third party advertisers and retailers of Defendant's goods and services which bear the Plaintiff's PATCH Marks or any infringement thereof, including but not limited to the Infringing PATCH Marks, and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademark similar thereto or likely to be confused therewith, or to cause dilution of the famous PATCH Marks, alone or in combination with any other word or element, and all plates, molds, matrices, and other means from making the aforesaid items.

F.    That the Defendant be directed to, as applicable, surrender for cancellation all trademark applications and registration(s) in the United States for the Infringing PATCH Marks, including without limitation, the PTI Applications, or any other confusingly similar variations of the Plaintiff's PATCH Marks, and/or to expressly abandon or otherwise withdraw all applications pending in the United States that seek to register the Infringing PATCH Marks

or any other confusingly similar variations of the Plaintiff's PATCH Marks, including without limitation the PTI Applications.

G.      That the Defendant be directed to file with this Court and to serve upon Plaintiff within thirty days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs A through F above, including all subparts.

H.      That Plaintiff have and recover Defendant's profits and the damages of Plaintiff arising from Defendant's acts of trademark infringement, unfair competition, and trademark dilution, and that the Court, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, enter judgment, and that said sums be trebled as authorized pursuant to 15 U.S.C. §1117(b).

I.      That Plaintiff have and recover such sums as are necessary to place or compensate for corrective advertising.

J.      That Plaintiff have and recover compensatory damages.

K.      That Plaintiff have and recover punitive damages, pursuant to federal law, the laws of the State of Delaware, and common law, in addition to actual damages and/or compensatory damages.

L.      That Plaintiff have and recover both pre-judgment and post-judgment interest on each and every damage award.

M.      That Plaintiff be entitled to injunctive relief as set forth in §34 of the Lanham Act, 15 U.S.C. § 1116;

N.      That Plaintiff have and recover the remedies set forth in §35 of the Lanham Act, 15 U.S.C. §§1117.

O.     That Plaintiff have and recover the remedies set forth in §36 of the Lanham Act, 15 U.S.C. §§1118.

P.     The Plaintiff have and recover the remedies set forth in 6 *Del. C.* § 3314.

Q.     That the Court award an accounting of Defendant's profits from the sale of goods and services sold under the Infringing PATCH Marks through trial or final adjudication.

R.     That Plaintiff have and recover its reasonable attorney's fees incurred in this action, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, and as otherwise authorized.

S.     That Plaintiff have and recover its taxable costs and disbursements herein, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, and as otherwise authorized.

T.     That Plaintiff have and recover such further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury as to all issues triable of right by a jury.

Dated: August 28, 2023                    BARNES & THORNBURG, LLP

*/s/  Chad S.C. Stover*
Chad S.C. Stover (#4919)
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801
(302) 300-3474
Chad.stover@btlaw.com

OF COUNSEL:

Jeffrey C. Morgan (*Pro Hac Vice forthcoming*)
BARNES & THORNBURG, LLP
3340 Peachtree Road, N.E., Suite 2900
Atlanta, GA 30326-1092
(404) 264-4015
Jeff.morgan@btlaw.com

Attorneys for Plaintiff
PLANCK LLC